**Gary M. Berne,** OSB No. 774077
Email: gberne@stollberne.com
**Steve D. Larson,** OSB No. 863540
Email: slarson@stollberne.com
**Jennifer S. Wagner,** OSB No. 024470
Email: jwagner@stollberne.com
STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone:  (503) 227-1600
Facsimile:   (503) 227-6840

**Paul J. Geller** (*pro hac vice* forthcoming)
Email: pgeller@rgrdlaw.com
**Stuart A. Davidson** (*pro hac vice* forthcoming)
Email: sdavidson@rgrdlaw.com
**Christopher C. Gold** (*pro hac vice* forthcoming)
Email: cgold@rgrdlaw.com
ROBBINS GELLER RUDMAN & DOWD LLP
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone:  (561) 750-3000
Facsimile:   (561) 750-3364

Attorneys for Plaintiff

[Additional counsel listed on signature block]

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| ANECA FEDERAL CREDIT UNION, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> INTEL CORPORATION, <br><br> Defendant. | Case No. 3:18-cv-00258 <br><br> **CLASS ACTION ALLEGATION COMPLAINT** <br><br> <u>DEMAND FOR JURY TRIAL</u> |

{SSBLS Main Documents/9999/073/00696019-2 }

Plaintiff Aneca Federal Credit Union ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Allegation Complaint against Defendant Intel Corporation ("Intel" or "Defendant") and makes the following allegations, which are based upon the investigation of counsel, Plaintiff's personal knowledge, and information and belief:

## SUMMARY OF THE ACTION

1.      Intel is an American technology company headquartered in Santa Clara, California. Until 2017, Intel was the world's largest manufacturer of semiconductor chips ("CPU(s)") – the hardware component responsible for interpreting and executing most of the commands from a computer's other hardware and software, *i.e.*, the brain of a computer, laptop, or mobile device.  Intel sells its CPUs individually and as components of personal computers and mobile devices manufactured by other companies, such as Apple, Asus, Acer, Google, Lenovo, Hewlett Packard, and Dell.  It has been reported that 90% of the approximately 1.5 billion personal computers in use today are powered by Intel CPUs.

2.      Speed and security are two of the most essential features in a CPU, and Intel's success is largely based on the advertised speed and security of its CPUs.  But Intel's focus on producing a faster CPU left its CPUs with security vulnerabilities and exposed to cyber-attack. Specifically, in 1995 Intel began designing most of its modern CPUs to perform a process known as "speculative execution," which is intended to increase performance by allowing a CPU to predict its next set of instructions ("Defect").  While speculative execution may increase the speed of a CPU, Intel has known for many months, and recently reported on January 3, 2018, that speculative execution creates serious security vulnerabilities – dubbed Meltdown and Spectre – that can be exploited by hackers to steal passwords, encryption keys, photos, emails, instant messages, sensitive business documents, and other sensitive data.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

3.    The Defect exists in nearly every Intel CPU manufactured in the last 20 years and, thus, affects most personal computers, laptops, smartphones, tablets, and servers in use today ("Affected Device(s)").

4.    Intel has admitted to having knowledge of the Defect for at least six months, yet during that time, Intel continued to manufacture, sell, and distribute its defective CPUs without disclosure of the Defect. Intel knew or should have known of the Defect long ago but either failed to disclose the Defect or was negligent or reckless in failing to discover it. Indeed, working without the benefit of Intel's proprietary information, at least three security researchers independently discovered the Defect in 2017. With its inside knowledge and familiarity with the design and inner workings of its CPUs, Intel was in a better position to discover the Defect than third-party researchers and, as the manufacturer of the defective CPUs that it introduced into the market, Intel had a duty to do so.

5.    Since the Defect was finally confirmed by Intel on January 3, 2018, companies like Google, Apple, Microsoft, and others have scrambled to release software patches to address the security vulnerabilities in Intel's CPUs. But since the Defect is a design defect existing in the hardware and architecture of each affected CPU, a software patch will do nothing more than "mitigate" the threat. And, moreover, it has been widely reported that any mitigation patch could *reduce the performance of an Affected Device by up to 30% or more*.

6.    Only a full redesign of Intel's CPUs can remedy the Defect and eliminate the Meltdown and Spectre security vulnerabilities. Indeed, Intel issued separate statements confirming that each defective CPU "is operating exactly as it is designed"[1] and that "Intel is continuing to investigate *architecture and/or microarchitecture changes* to combat these types of attacks."[2]

---

[1]    Intel, https://www.intel.com/content/www/us/en/architecture-and-technology/facts-about-side-channel-analysis-and-intel-products.html (last visited Feb. 7, 2018).

[2]    *Intel Analysis of Speculative Execution Side Channels*, at 8, https://newsroom.intel.com/wp-content/uploads/sites/11/2018/01/Intel-Analysis-of-Speculative-Execution-Side-Channels.pdf ("*Intel Analysis*").

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

7.     Thus, because security is a critical feature of any part of an Affected Device's hardware or software, the CPUs Intel designed, manufactured, distributed, sold, and installed in Affected Devices sold to Plaintiff and the Class (defined below) were not merchantable and were not fit for the ordinary and particular purposes for which such goods are used.

8.     Plaintiff and the other members of the Class are now forced to either purchase new, Defect-free CPUs or continue to use defective CPUs with serious security vulnerabilities and/or significantly reduced performance, both of which are extremely serious concerns for businesses.

9.     Plaintiff and the other members of the Class have suffered ascertainable injuries and loss of money or property as a result of Defendant's wrongdoing because they would not have purchased Intel's CPUs, or Affected Devices containing Intel CPUs, or would not have paid the price they paid, but for Intel's failure to disclose the existence of the Defect.

## PARTIES

10.     Plaintiff Aneca Federal Credit Union is a federally chartered credit union located in Shreveport, Louisiana. In 2015, Plaintiff purchased 15 Dell Optiplex computers, each of which was equipped with an Intel Core i5 CPU, which is affected by the Defect. Plaintiff also purchased three Surface Pro computers and one Surface Book computer approximately two years ago, which also contain defective Intel Core i5 CPUs. Plaintiff would not have purchased these Affected Devices containing defective Intel CPUs, or would not have paid the prices it paid, but for Intel's failure to disclose the existence of the Defect.

11.     Defendant Intel Corporation is an American semiconductor company with headquarters at 2200 Mission College Boulevard, Santa Clara, California. At all relevant times, Intel was engaged in designing, manufacturing, distributing, and selling electronic computer components, including the defectively designed CPUs at issue.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

## JURISDICTION AND VENUE

12.    This Court has jurisdiction under 28 U.S.C. §1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5 million exclusive of interest and costs.

13.    Venue is proper under 28 U.S.C. §1391 because many of the acts and transactions underlying this action occurred in this District and because: (a) a substantial part of the events or omissions giving rise to this claim occurred in this District; (b) Defendant is authorized to conduct business in this District and has intentionally availed itself of the laws and markets within this District through the promotion, marketing, distribution, and sale of its defective CPUs; (c) Defendant conducts substantial business in this District; and (d) Defendant is subject to personal jurisdiction in this District.  Indeed, on January 29, 2018, Defendant filed a Response to Plaintiffs' Motion to Transfer in *In re Intel Corp. CPU Mktg., Sales Practices & Prods. Liab. Litig.*, MDL No. 2828, where Defendant stated, "Intel has extensive operations in Oregon, and the team that evaluated the security vulnerabilities and developed patches to mitigate them is principally based in Portland." ECF No. 40, at 1-2.

## SUBSTANTIVE ALLEGATIONS

14.    Intel is an American technology company headquartered in Santa Clara, California. Until 2017, Intel was the world's largest manufacturer of CPUs – the hardware component that serves as the brain of a computer, laptop, or mobile device.  Intel sells its CPUs individually and as components of Affected Devices manufactured by other companies such as Apple, Asus, Acer, Google, Lenovo, Hewlett Packard, and Dell.  It has been reported that 90% of the approximately 1.5 billion personal computers in use today are powered by Intel CPUs.

15.    In a January 3, 2018 statement, Google revealed that, sometime in 2017, security researchers from Google's Project Zero discovered "serious security flaws" existing in most of Intel's CPUs.  The security flaws – dubbed Meltdown and Spectre – were reportedly discovered

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

simultaneously by multiple research groups working independently from one another, including, but not limited to, researchers from Cyberus Technology and the Graz University of Technology.

16.     The Meltdown and Spectre vulnerabilities are the result of an undisclosed tradeoff that Intel made between security and performance in order to manufacture faster CPUs and become the dominant CPU manufacturer in the industry.  Specifically, beginning in 1995, Intel began designing its CPUs to perform a process known as "speculative execution."  Speculative execution increases performance by allowing a CPU to predict its next set of instructions.  Intel's priority on speed and performance, however, reduced Intel's focus on security.  As discovered by researchers from Google and elsewhere, speculative execution can be exploited by hackers to access sensitive data stored in the memory of a computer in order to steal passwords, encryption keys, photos, emails, instant messages, sensitive business documents, and other sensitive data.

17.     Meltdown affects every Intel processor manufactured since 1995 (other than Intel Itanium and Intel Atom before 2013).  The Spectre vulnerability is more far-reaching and impacts most desktops, laptops, cloud servers, and smartphones in use today.  Millions of devices in use today are affected by the Defect, including those manufactured by Apple, Asus, Acer, Google, Lenovo, Hewlett Packard, and Dell.

18.     After Intel finally acknowledged the Defect on January 3, 2018, companies like Google, Apple, Microsoft, and others have scrambled to release software patches to address the security vulnerabilities in Intel's CPUs.  But since the Defect is a design defect existing in the hardware and architecture of each affected CPU, a software patch will do nothing more than "mitigate" the threat.  And, moreover, it has been widely reported that any mitigation patch could *reduce the performance of an Affected Device by up to 30% or more*.

19.     Only a full redesign of Intel's CPUs can remedy the Defect and eliminate the Meltdown and Spectre security vulnerabilities.  Indeed, Intel issued separate statements confirming

{SSBLS Main Documents/9999/073/00696019-2 }
Page 6 -     **CLASS ACTION ALLEGATION COMPLAINT**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

that the Defect "is operating exactly as it is designed"[3] and that "Intel is continuing to investigate *architecture and/or microarchitecture changes* to combat these types of attacks."[4]

20.    On January 3, 2018, Intel issued a statement acknowledging that it had been made aware of the Meltdown and Spectre vulnerabilities. However, Intel downplayed the seriousness of the vulnerabilities, claiming that "Intel believes its products are the most secure in the world," and disputing reports that software and firmware patches to mitigate those threats would impact the performance of a CPU.[5]

21.    Six days later, on January 9, 2018, Intel continued to downplay the claims of reduced performance but conceded that "8th Generation Core platforms with solid state storage will see a performance impact of 6 percent or less*" while acknowledging that its assertion of a 6% slowdown was based on "individual test results [that] ranged from 2 percent to 14 percent."[6]

22.    That same day, Microsoft issued a statement addressing the Meltdown and Spectre vulnerabilities and confirmed that software mitigation patches will result in slowdowns of devices running Windows 10 on newer silicon (2016-era PCs with Skylake, Kabylake or newer CPU), while "*significant slowdowns*" and "*decrease in system performance*" will occur on devices running Windows 10 on older silicon (2015-era PCs with Haswell or older CPU) and Windows 8 and Windows 7 on older silicon, as well as with Windows Server on any silicon.[7]

---

[3]    Intel, *supra* n.1.

[4]    *Intel Analysis*, at 8.

[5]    Intel, *Intel Responds to Security Research Findings* (Jan. 3, 2018), https://newsroom.intel.com/news/intel-responds-to-security-research-findings/?cid=sem437000293 10889950&intel_term=intel+meltdown&gclid=Cj0KCQiAs9zSBRC5ARIsAFMtUXHxfP0Cap_XAl2L1aiEi3XHN07tAYPR7Eb1B5BnMsMCtsvvEQgqSVcaAonnEALw_wcB&gclsrc=aw.ds &dclid=COX8-6Km0NgCFRmxTwodaxwM3A.

[6]    Intel, *Intel Offers Security Issue Update* (Jan. 9, 2018), https://newsroom.intel.com/news/ intel-offers-security-issue-update/.

[7]    Terry Myerson, *Understanding the performance impact of Spectre and Meltdown mitigations on Windows Systems* (Jan. 9, 2018), https://cloudblogs.microsoft.com/microsoftsecure/2018/01/09/ understanding-the-performance-impact-of-spectre-and-meltdown-mitigations-on-windows-systems/.

{SSBLS Main Documents/9999/073/00696019-2 }

Page 7 -    **CLASS ACTION ALLEGATION COMPLAINT**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

23.     Although researchers reportedly informed Intel of the Meltdown and Spectre vulnerabilities in June and/or July 2017, Intel did not publicly acknowledge the Defect until January 3, 2018. During that interim period, Intel's Chief Executive Officer, Brian Krzanich ("Krzanich"), sold millions of dollars of Intel stock – the maximum allowable under Intel's bylaws – and received more than $39 million before the security flaw became public. While Krzanich cashed out and avoided the anticipated drop in Intel's stock price as a result of the disclosure of the Defect, consumers continued to purchase Intel's defective CPUs and Affected Devices equipped with Intel's defective CPUs, which they would not have purchased had Intel disclosed the Defect.

24.     Intel knew or should have known of the Defect long ago but either failed to disclose the Defect or was negligent or reckless in failing to discover it. Indeed, working without the benefit of Intel's proprietary information, at least three security researchers independently discovered the Defect in 2017. With its inside knowledge and familiarity with the design and inner workings of its CPUs, Intel was in a better position to discover the Defect than third-party researchers and, as the manufacturer of the defective CPUs that it introduced into the market, Intel had a duty to do so.

25.     Thus, the CPUs Intel designed, manufactured, sold, and installed in Affected Devices sold to Plaintiff and the Class were not merchantable and were not fit for the ordinary and particular purposes for which such goods are used.

26.     Plaintiff and the other members of the Class are now forced to either purchase new, Defect-free CPUs or continue to use defective CPUs with serious security vulnerabilities and/or significantly reduced performance.

27.     This problem is particularly troublesome for businesses such as financial institutions, whose CPUs possess sensitive personal information.

28.     Plaintiff and the other members of the Class have suffered ascertainable injuries and a loss of money or property as a result of Defendant's wrongdoing because they would not have purchased Intel's CPUs, or Affected Devices containing Intel's CPUs, or would not have paid the price they paid, but for Intel's failure to disclose the existence of the Defect.

{SSBLS Main Documents/9999/073/00696019-2 }
Page 8 -    **CLASS ACTION ALLEGATION COMPLAINT**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600    FAX (503) 227-6840

## CLASS ACTION ALLEGATIONS

29.    Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following proposed Nationwide Class ("Nationwide Class"):

*All business entities that, between 1995 and the present, purchased one or more Intel CPUs from Intel Corporation or its authorized retailer sellers, or one or more devices containing defective Intel CPU components.*

30.    In the alternative, Plaintiff brings this action on behalf of the following proposed Louisiana Class ("Louisiana Class"):[8]

*All business entities in Louisiana that, between 1995 and the present, purchased one or more Intel CPUs from Intel Corporation or its authorized retailer sellers, or one or more devices containing defective Intel CPU components.*

31.    Subject to additional information obtained through further investigation and discovery, the foregoing definitions of the Class may be expanded or narrowed by amendment or amended complaint.

32.    Specifically excluded from the Class are Defendant, its officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint venturers, or entities controlled by Defendant, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or its officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

33.    ***Numerosity***.  The members of the Class are so numerous that individual joinder is impracticable.  Upon information and belief, Plaintiff alleges that the Class contains millions of members.  The precise number of Class members is unknown to Plaintiff but is known by Defendant or its agents, however, and, thus, may be notified of the pendency of this action by first class mail, electronic mail, published notice, or other customary means that satisfy due process.

34.    ***Existence and predominance of common questions of law and fact***.  Common questions of law and fact exist as to all members of the Class and predominate over any questions

---

[8]    Unless otherwise noted, the term "Class" as used herein refers collectively to the Nationwide Class and the Louisiana Class.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

affecting only individual Class members.  These common legal and factual questions include, but are not limited to, the following:

(a)    whether Defendant's CPUs are defectively designed;

(b)    whether Affected Devices containing Defendant's CPUs are vulnerable to security flaws, including Spectre and/or Meltdown;

(c)    whether Defendant had a duty to discover the Defect;

(d)    whether Defendant had a duty to notify manufacturers of the Affected Devices of the Defect;

(e)    whether Defendant had a duty to notify purchasers of the Affected Devices of the Defect;

(f)    whether Defendant made any express warranties in connection with the sale of its defective CPUs;

(g)    whether Defendant breached any express warranties in connection with the sale of its defective CPUs;

(h)    whether Defendant made any implied warranties in connection with the sale of its defective CPUs;

(i)    whether Defendant breached any implied warranties in connection with the sale of its defective CPUs;

(j)    whether Defendant's acts and practices violated the "unlawful" prong of the Unfair Competition Law, California Business and Professions Code §17200, *et seq.* ("UCL");

(k)    whether Defendant's acts and practices violated the "unfair" prong of the UCL;

(l)    whether Defendant's acts and practices violated the "fraudulent" prong of the UCL;

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600    FAX (503) 227-6840

(m)    whether Defendant's conduct violates the Louisiana Unfair Trade Practices and Consumer Protection Law, LSA R.S. §51:1401, *et seq.* ("LUTPA");

(n)    whether Defendant's acts and practices would deceive a reasonable consumer;

(o)    whether Defendant was unjustly enriched;

(p)    whether Plaintiff and the other Class members have sustained monetary loss and the proper measure of that loss; and

(q)    whether Plaintiff and the other Class members are entitled to declaratory and injunctive relief.

35.    ***Typicality***.  Plaintiff's claims are typical of the claims of the other Class members in that the injuries suffered by Plaintiff and the Class arise from a common nucleus of operative facts based on Defendant's uniform conduct, and Plaintiff is not subject to any unique defenses.

36.    ***Adequacy of representation***.  Plaintiff will fairly and adequately protect the interests of the Class.  Plaintiff has retained counsel highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action.  Further, Plaintiff has no interests that are antagonistic to those of the other members of the Class.

37.    ***Superiority***.  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class members are relatively small compared to the burden and expense that would be involved in individual litigation of their claims against Intel.  It would, thus, be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs committed against them.  Furthermore, even if Class members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding,

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600  FAX (503) 227-6840

economies of scale, and comprehensive supervision by a single United States District Court and presents no unusual management difficulties under the circumstances here.

38.     In the alternative, the Class may also be certified because:

(a)     the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for Intel;

(b)     the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

(c)     Intel has acted or refused to act on grounds generally applicable to the Class as a whole, thereby making appropriate final declaratory and injunctive relief with respect to the members of the Class as a whole.

39.     Alternatively, certain issues relating to Intel's liability may be certified pursuant to Fed. R. Civ. P. 23(c)(4).

## FIRST CLAIM FOR RELIEF

**<u>Unlawful</u> Business Practices in Violation of the Unfair Competition Law,
California Business and Professions Code §17200, *et seq.*
(On behalf of the Nationwide Class)**

40.     Plaintiff realleges and incorporates by reference the allegations above as though fully set forth herein.

41.     By reason of the conduct alleged herein, Defendant engaged in unlawful practices within the meaning of the UCL. The conduct alleged herein is a "business practice" within the meaning of the UCL.

42.     As alleged herein, Defendant engaged in unlawful business acts and practices in violation of the "unlawful" prong of the UCL by:

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

(a)     violating the Magnuson-Moss Warranty Act, 15 U.S.C. §2301, *et seq.* ("MMWA"); and

(b)     breaching implied warranties.

43.    Plaintiff reserves the right to allege other violations of law by Defendant, which constitute additional unlawful business acts or practices in violation of the UCL.

44.    Defendant's unlawful business acts and practices in violation of the UCL were likely to deceive, and in fact, did deceive, members of the public, including Plaintiff and the other members of the Nationwide Class, who suffered injury in fact and lost money or property as the result of Defendant's unlawful business practices.

45.    Plaintiff seeks an Order enjoining Defendant's unlawful business acts and practices in violation of the UCL, and for restitution and disgorgement of all ill-gotten gains.

## SECOND CLAIM FOR RELIEF

### Unfair Business Practices in Violation of the Unfair Competition Law,
### California Business and Professions Code §17200, *et seq.*
### (On behalf of the Nationwide Class)

46.    Plaintiff realleges and incorporates by reference the allegations above as though fully set forth herein.

47.    By reason of the conduct alleged herein, Defendant engaged in unfair business acts and practices within the meaning of the UCL.  The conduct alleged herein is a "business practice" within the meaning of the UCL.

48.    As alleged herein, Defendant engaged in unfair business acts and practices in violation of the "unfair" prong of the UCL by:

(a)     engaging in conduct, the utility of which, if any, is outweighed by the gravity of the consequences to Plaintiff and the other members of the Nationwide Class considering reasonably available alternatives and legislative policy;

(b)     engaging in conduct that violates established public policy; and

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

(c)    engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and the other members of the Nationwide Class.

49.    Defendant's unfair business acts and practices in violation of the UCL were likely to deceive, and in fact, did deceive, members of the public, including Plaintiff and the other members of the Nationwide Class, who suffered injury in fact and lost money or property as the result of Defendant's unfair business practices.

50.    Plaintiff seeks an Order enjoining Defendant's unfair business acts and practices in violation of the UCL, and for restitution and disgorgement of all ill-gotten gains.

## THIRD CLAIM FOR RELIEF

### Fraudulent Business Practices in Violation of the Unfair Competition Law
### California Business and Professions Code §17200, *et seq.*
### (On behalf of the Nationwide Class)

51.    Plaintiff realleges and incorporates by reference the allegations above as though fully set forth herein.

52.    As alleged herein, Defendant engaged in "fraudulent" business acts and practices by:

(a)    designing, marketing, distributing, and selling defective CPUs without disclosing that the CPUs contained a design defect;

(b)    refusing to repair or recall the defective CPUs; and

(c)    refusing or failing to compensate injured consumers, including Plaintiff and the other members of the Nationwide Class.

53.    Defendant's fraudulent business acts and practices in violation of the UCL were likely to deceive, and in fact, did deceive, members of the public, including Plaintiff and the other members of the Nationwide Class, who suffered injury in fact and lost money or property as the result of Defendant's fraudulent business practices.

54.    Plaintiff seeks an Order enjoining Defendant's fraudulent business acts and practices in violation of the UCL, and for restitution and disgorgement of all ill-gotten gains.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

## FOURTH CLAIM FOR RELIEF

**Breach of Express Warranty**
**(On behalf of the Nationwide Class and the Louisiana Class)**

55.    Plaintiff realleges and incorporates by reference the allegations above as though fully set forth herein.

56.    Defendant designed, manufactured, advertised, and distributed defective CPUs. Defendant is a "merchant" and the Intel CPUs are "goods" within the meaning of the Uniform Commercial Code.

57.    In connection with each sale, Defendant represented that its CPUs provided a particular level of security, which they did not, and were of particular speeds, which, after implementation of a software patch necessary to mitigate security threats caused by a design defect, they are not.

58.    Defendant's affirmations of fact and promises relating to its defective CPUs became part of the basis of the bargain and created an express warranty that the CPUs would conform to Defendant's affirmations and promises.

59.    Defendant's express warranties run to Plaintiff and the other members of the Class either directly or as third-party beneficiaries.

60.    Defendant breached its express warranties by delivering CPUs that failed to conform to Defendant's affirmations and promises.

61.    Defendant's breach of express warranties directly and proximately caused damages, injury in fact, and ascertainable loss to Plaintiff and the other members of the Class, in an amount to be determined at trial.

62.    All conditions precedent to this claim have been satisfied.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

## FIFTH CLAIM FOR RELIEF

### Breach of Implied Warranty
### (On behalf of the Nationwide Class and the Louisiana Class)

63.     Plaintiff realleges and incorporates by reference the allegations above as though fully set forth herein.

64.     Defendant is a merchant with respect to the defective CPUs.

65.     As such, a warranty that each CPU was merchantable and fit for a particular purpose was implied in the contract of each sale to Plaintiff and the other members of the Class.

66.     To be merchantable, Defendant's CPUs, at a minimum, were required to: (a) pass without objection in the trade under the contract description; (b) be fit for the ordinary purposes for which such goods are used; and (c) conform to the promises or affirmations of fact made on the container.

67.     Defendant's implied warranties extend directly to Plaintiff and the other members of the Class either directly or as third-party beneficiaries.

68.     Defendant breached the implied warranty of merchantability by delivering CPUs that were not merchantable in that: (a) the CPUs could not pass without objection in the trade under the contract description in that they provide deficient security and performance, which are key features of a CPU;  (b) they did not conform to Defendant's promises or affirmations of fact regarding their security and performance; and (c) they were not fit for the ordinary purposes for which CPUs are used, namely to provide fast and secure computer processing power.

69.     Defendant's breaches of implied warranties directly and proximately caused damages, injury in fact, and ascertainable loss to Plaintiff and the other members of the Class, in an amount to be determined at trial

70.     All conditions precedent to this claim have been satisfied.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600  FAX (503) 227-6840

## SIXTH CLAIM FOR RELIEF

**Violations of the Magnuson-Moss Warranty Act, 15 U.S.C. §2301, *et seq*.**
**(On behalf of the Nationwide Class and the Louisiana Class)**

71.     Plaintiff realleges and incorporates by reference the allegations above as though fully set forth herein.

72.     Under the MMWA, an "implied warranty" is one that "arise[s] under State law . . . in connection with the sale by a supplier of a consumer product." 15 U.S.C. §2301.

73.     Plaintiff and the other Class members are "consumers," Defendant is a "supplier" and "warrantor," and the defective CPUs are "consumer products" as defined by the MMWA. 15 U.S.C. §2301.

74.     Defendant impliedly warranted that the CPUs it designed, manufactured, and sold were merchantable and fit for the ordinary and particular purposes for which the CPUs are used. Defendant breached the implied warranty with Plaintiff and the other members of the Class by delivering CPUs that were neither merchantable nor fit for the ordinary and particular purposes for which the CPUs are used.

75.     As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff and the other Class members have been damaged.

## SEVENTH CLAIM FOR RELIEF

**Unjust Enrichment**
**(On behalf of the Nationwide Class and the Louisiana Class)**

76.     Plaintiff realleges and incorporates by reference the allegations above as though fully set forth herein.

77.     This cause of action is pled in the alternative.

78.     Plaintiff and the other members of the Class purchased from Defendant and its authorized retailers and resellers defective CPUs they would not otherwise have purchased but for Defendant's failure to disclose the Defect.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

79.     As such, Defendant has been unjustly enriched at the expense of Plaintiff and the other members of the Class.

80.     Under the circumstances, it would be unfair, improper, and unjust for Defendant to retain this financial benefit.

81.     Plaintiff and the other members of the Class have no adequate remedy at law.

## EIGHTH CLAIM FOR RELIEF

**Violation of Louisiana Unfair Trade Practices and Consumer Protection Law, LSA R.S. §51:1401,** *et seq.*
**(On behalf of the Louisiana Class)**

82.     Plaintiff realleges and incorporates by reference the allegations above as though fully set forth herein.

83.     Plaintiff and the Louisiana Class are "consumers" within the meaning of LSA R.S. §51:1402(1).

84.     Plaintiff, the Louisiana Class, and Defendant are "persons" within the meaning of LSA R.S. §51:1402(8).

85.     Defendant was and is engaged in "trade or commerce" within the meaning of LSA R.S. §51:1402(10).

86.     The LUTPA does not specifically define the acts that constitute unfair or deceptive trade practices.  Courts determine its application on a case-by-case basis.   Generally, acts which constitute unfair trade practices under the LUTPA involve fraud, deception, misrepresentation, breach of fiduciary duty, or other unethical conduct.  A plaintiff mail prevail on a LUTPA claim, by showing the alleged conduct offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious.  *See, e.g.*, *Cupp Drug Store, Inc. v. Blue Cross & Blue Shield of La., Inc.*, 161 So. 3d 860, 869 (La. Ct. App. 2d Cir. 2015).

87.     In the course of Defendant's business, it engaged in unfair trade practices by representing that defective CPUs have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have; representing that defective CPUs are of a particular

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and advertising the defective CPUs with intent not to sell them as advertised. Defendant participated in misleading, false, or deceptive acts that violated the LUTPA.

88.    By failing to disclose and by actively concealing the defective CPUs, by marketing its CPUs as secure and having a particular performance capability, and by failing to stand behind its CPUs after they were sold, Defendant engaged in unfair trade practices prohibited by the LUTPA.

89.    In the course of its business, Defendant failed to disclose and actively concealed the defects in the CPUs, *i.e.*, that they were not secure and not of a particular performance, and otherwise engaged in activities with a tendency or capacity to deceive. Defendant also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the defective CPUs.

90.    Defendant engaged in unfair trade practices that violated the LUTPA by selling, failing to disclose, and actively concealing the defects in its CPUs and their true security and performance and by marketing its defective CPUs as having particular security and performance reliability.

91.    Defendant misrepresented material facts regarding the defective CPUs with intent to mislead Plaintiff and the Louisiana Class.

92.    Defendant knew or should have known that its conduct violated the LUTPA.

93.    Defendant owed Plaintiff and the other members of the Louisiana Class a duty to disclose the defective nature of the CPUs because it:

(a)    possessed exclusive knowledge that it was manufacturing, selling, and distributing defective CPUs throughout the United States; and/or

(b)    made incomplete representations about the security and performance of its CPUs while withholding material facts from Plaintiff that contradicted these representations.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600  FAX (503) 227-6840

94.     Defendant's sale of the defective CPUs and concealment of the true characteristics of the defective CPUs were material to Plaintiff and the other members of the Louisiana Class.

95.     Defendant's design, manufacture, and sale of defective CPU units, without disclosing the existence of the Defect, is an unfair trade practice that is likely to mislead – and has misled – consumers acting reasonably under the circumstances.

96.     Plaintiff and the other members of the Louisiana Class have been substantially injured by Defendant's unfair practices in that they relied on Defendant's specifications of security and performance for each Affected Device they purchased but did not receive CPUs with such specified security and performance features.  Indeed, Plaintiff and the other members of the Louisiana Class would not have purchased Affected Devices with Defendant's defective CPUs, or would not have paid as much as they did, but for Defendant's unfair practices.

97.     Plaintiff and the other members of the Louisiana Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentations and its concealment of and failure to disclose material information.

98.     Plaintiff and the Class also suffered diminished value of their Affected Devices containing defective CPUs, as well as lost or diminished use.

99.     Defendant had an ongoing duty to refrain from unfair trade practices under the LUTPA.

100.     Defendant's violations present a continuing risk to Plaintiff and the other members of the Louisiana Class, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

101.     Contemporaneous with filing this complaint, Plaintiff sent a letter complying with LSA R.S. § 51:1409(B).

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for judgment as follows:

A.    Certifying the Nationwide Class or, in the alternative, the Louisiana Class as requested herein, appointing Plaintiff as Class Representative, and appointing Robbins Geller Rudman & Dowd LLP, Zimmerman Reed, LLP, and Stoll Stoll Berne Lokting & Shlachter P.C. as Class counsel;

B.    Awarding Plaintiff and the Class damages, including statutory, compensatory, consequential, and punitive damages, as well as interest thereon;

C.    Awarding declaratory, injunctive, and other equitable relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices described herein, and directing Defendant to identify, with this Court's supervision, victims of its conduct and to pay them restitution of all monies acquired through any act or practice declared by this Court to be wrongful or unlawful;

D.    Awarding restitution and disgorgement of Defendant's revenues to Plaintiff and the Class;

E.    Awarding Plaintiff attorneys' fees and costs; and

F.    Providing any and all further legal and equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully demands trial by jury on all issues so triable.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

DATED this 9th day of February, 2018.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.


By: s/Jennifer S. Wagner
    **Gary M. Berne,** OSB No. 774077
    **Steve D. Larson,** OSB No. 863540
    **Jennifer S. Wagner,** OSB No. 024470

209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone:  (503) 227-1600
Email:        gberne@stollberne.com
             slarson@stollberne.com
             jwagner@stollberne.com

ROBBINS GELLER RUDMAN & DOWD LLP
**Paul J. Geller** (*pro hac vice* forthcoming)
**Stuart A. Davidson** (*pro hac vice* forthcoming)
**Christopher C. Gold** (*pro hac vice* forthcoming)
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone:  (561) 750-3000
Email:        pgeller@rgrdlaw.com
             sdavidson@rgrdlaw.com
             cgold@rgrdlaw.com

ZIMMERMAN REED, LLP
**Brian C. Gudmundson** (*pro hac vice* forthcoming)
1100 IDS Center, 80 South 8th Street
Minneapolis, MN  55402
Telephone:  (612) 341-0400
Email:        brian.gudmundson@zimmreed.com

Attorneys for Plaintiff

{SSBLS Main Documents/9999/073/00696019-2 }
Page 22 -   **CLASS ACTION ALLEGATION COMPLAINT**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600  FAX (503) 227-6840