FILED

NOV 2 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| In re: INTEL CORP. CPU MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION, _____ JIMAYA GOMEZ; et al., Plaintiffs-Appellants, v. INTEL CORPORATION, a Delaware corporation, Defendant-Appellee. | No.   22-35652 D.C. No. 3:18-md-02828-SI MEMORANDUM* |

Appeal from the United States District Court
for the District of Oregon
Michael H. Simon, District Judge, Presiding

Argued and Submitted October 17, 2023
Portland, Oregon

Before: KOH and SUNG, Circuit Judges, and EZRA,** District Judge.

Plaintiffs appeal the district court's dismissal of their claims brought against

---

*      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

**      The Honorable David A. Ezra, United States District Judge for the District of Hawaii, sitting by designation.

Intel Corporation ("Intel") on behalf of a nationwide class.[1] In three orders from 2021 to 2022, the district court first dismissed Plaintiffs' omission-based claims,[2] and later dismissed their unfair conduct claims.[3] We have jurisdiction under 28 U.S.C. § 1291. We review *de novo*, *see Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1016 (9th Cir. 2020), and we affirm.

**1. Omission-Based Claims**. Under California law, a claim will lie for a fraudulent omission only where the defendant was under a duty to disclose the omitted fact. *See Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018) (citing *Daugherty v. Am. Honda Motor Co.*, 51 Cal. Rptr. 3d 118, 126 (Ct. App. 2006)). In *Hodsdon v. Mars, Inc.*, we held that a duty to disclose arises where (1) the omission is material, (2) "the defect was central to the product's function," and (3) one of the four factors discussed in *LiMandri v. Judkins*, 60 Cal. Rptr. 2d 539 (Ct.

---

[1] As Plaintiffs did not discuss any of the state subclass claims in their Opening Brief, those claims are forfeited on appeal. *Friends of Yosemite Valley v. Kempthorne*, 520 F.3d 1024, 1033 (9th Cir. 2008).

[2] These claims were raised under California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750; False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500; the "fraud prong" of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200; and common law fraud by concealment and omission.

[3] These consisted of a claim under the "unfair" prong of the UCL, and a quasi-contract/unjust enrichment claim. The latter claim is predicated on the same conduct as Plaintiffs' UCL claim, and the two claims therefore rise or fall together. *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015).

App. 1997), is present. *Hodsdon*, 891 F.3d at 863.

The district court concluded that Plaintiffs failed to plausibly allege that the defects were central to the function of Intel's processors. The court observed that "[t]he fact that Intel's chips have for years allegedly been vulnerable to novel [security] attacks, that were never exploited, does not go to the *central function* of the microprocessors." We agree. There is no allegation that Plaintiffs' processors ever stopped operating as "the 'brains' of the computing device[s], performing all necessary computations for each application . . . and each peripheral." Although the processors' level of security may well be material to consumers, the security risk presented by the defects alleged in this case does not make these defects central to the processors' function. *See id.* at 864 (finding alleged defect material, but not central).

Because we agree that Plaintiffs' allegations fail to cross *Hodsdon*'s central functionality threshold, Plaintiffs have not established that Intel was under a duty to disclose the defects. As such, the district court properly dismissed Plaintiffs' omission-based claims.

**2. Unfair Conduct Claims**. California's "balancing test," applicable to Plaintiffs' unfair conduct claims, "weigh[s] the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 1000 (9th Cir. 2023) (alteration in original) (quoting

3

*Progressive W. Ins. Co. v. Super. Ct.*, 37 Cal. Rptr. 3d 434, 452 (Ct. App. 2005)). The district court initially dismissed Plaintiffs' unfair conduct claims for Intel's conduct prior to September 1, 2017, reasoning that Plaintiffs' allegations regarding this time period were coextensive with those of the previously dismissed omission-based claims. This conclusion was sound. Any allegations that Intel sold its processors while knowing them to be defective is simply another way of advancing Plaintiffs' fraud-by-omission argument, which, as discussed above, was not well pleaded. As Intel was under no duty to disclose the defects, this conduct cannot have been "substantially injurious" for purposes of an unfair conduct claim. *Hodsdon*, 891 F.3d at 867; *see Hauck v. Advanced Micro Devices, Inc.*, 816 F. App'x 39, 43 (9th Cir. 2020) (mem.).

   Plaintiffs' allegations regarding Intel's conduct after September 1, 2017, fare no better. To the extent Plaintiffs allege that Intel took advantage of an "information asymmetry" between Intel and its customers, and that it continued selling its processors despite knowing of the defects, these allegations are indistinguishable from the dismissed omission-based claims.

   The allegations regarding the impact of Intel's patches are similarly unavailing. Plaintiffs simultaneously allege that Intel failed to disclose that "there were pending security mitigations that could impact security and performance," but also that Intel made such a disclosure by "advis[ing] consumers not to download its

4

patches until better versions were deployed." Aside from these internal inconsistencies, Plaintiffs do not plausibly allege that the utility of the patches (that is, at least partial protection from security attacks) was outweighed by the alleged harm to Plaintiffs by way of reduced processor performance. *Cf. Hauck*, 816 F. App'x at 43 ("Plaintiffs have not plausibly alleged . . . that the harm represented by the theoretical risk of a cybersecurity flaw that has not yet been successfully exploited outweighs the other benefits of AMD's processor design.").

In addition, Plaintiffs' allegation regarding Intel's imposition of a licensing restriction is limited to a single, conclusory sentence in the operative Second Amended Complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (conclusory allegations are "not entitled to be assumed true").

Finally, Plaintiffs argue that Intel's unfair conduct is further evidenced by its statement to a media outlet that the exploits "were an industry-wide problem and not unique to Intel." However, given that Plaintiffs also allege that this statement was publicly denied by AMD, one of Intel's competitors, Plaintiffs fail to plausibly show that a reasonable consumer would have been misled by Intel's statement. *Cf. Ebner v. Fresh, Inc.*, 838 F.3d 958, 965–66 (9th Cir. 2016) (affirming Rule 12(b)(6) dismissal of California statutory claims where plaintiffs failed to plausibly allege "that the reasonable consumer would be deceived" by product's label). Moreover, Plaintiffs fail to allege that they actually relied on this statement. *See In*

5

*re Tobacco II Cases*, 207 P.3d 20, 26 (Cal. 2009) ("[A plaintiff] proceeding on a claim of misrepresentation as the basis of his or her UCL action must demonstrate actual reliance on the allegedly deceptive or misleading statements[.]"). Taken in their totality, none of Plaintiffs' allegations state a plausible claim that Intel engaged in unfair business practices.[4]

**AFFIRMED.**

---

[4] Because we agree that Plaintiffs did not state plausible claims for unfair conduct, we also conclude that the district court did not abuse its discretion in granting Intel's motion for reconsideration.